OPINION OF THE COURT
John J. Connell, J.
The defendants, claiming to be aggrieved by an unlawful or *363 improper acquisition of evidence, have moved to suppress statements made by them on March 15, 2001 to members of the Rochester Police Department on the ground that they were involuntarily made within the meaning of CPL 60.45. A confession or admission is admissible at trial in New York State only if its vohintariness is established by the People beyond a reasonable doubt (People v Yarter, 41 NY2d 830, cert denied 433 US 910; People v Valerius, 31 NY2d 51). A pretrial suppression hearing was conducted before me on this issue on August 15, 2001.
Findings of Fact
On March 15, 2001 the police were investigating a “home invasion” allegation involving the above-named defendants. Both defendants were transported by the police to the Goodman section of the Rochester Police Department to be interviewed. At 2:49 a.m. Officer Bonafede and Investigator David Giudici of the Rochester Police Department took part in the interview of Jessie Richardson. Officer Bonafede read defendant Richardson his Miranda warnings verbatim from People’s exhibit 2 which was received in evidence. The defendant understood his rights and agreed to speak with the officers about the incident. He provided them with an oral statement, after which he asked for the services of an attorney. The interview immediately ceased at that time. No threats or promises were made to the defendant Richardson to induce him to speak with the officers at that time.
At approximately 3:08 a.m. the same officers met with Shalon Nelson. Investigation Giudici read defendant Nelson his Miranda warnings verbatim from People’s exhibit 1 which was received in evidence. Mr. Nelson immediately asserted his right to silence and his right to counsel. In spite of the defendant’s response to the Miranda warnings, Investigator Giudici continued to question him, during which time incriminating statements were made by the defendant. To his credit, the investigator forthrightly testified that he continued the questioning based on police training he had received, which led him to believe that such statements would be allowed at trial for rebuttal should the defendant take the witness stand.
There was nothing to indicate that the defendant was threatened or coerced to make the statements given to Investigator Giudici.
*364 Conclusions of Law
Both defendants were properly advised of their Miranda warnings by the police. Jessie Richardson made a knowing, voluntary and intelligent waiver of those warnings and did provide oral statements to the investigators which were voluntary. The police scrupulously respected his assertion of his right to counsel by not questioning him any further beyond that point. The suppression motion of defendant Richardson is, therefore, denied.
Shalon Nelson never waived his right against self-incrimination or his right to counsel. Nonetheless, he made incriminating statements to the police who questioned him following his assertion of those rights.
The investigator was honest in describing the reason for his questioning the defendant in violation of his constitutional rights. Having been informed of the holding in Harris v New York (401 US 222) during police training, the investigator sought to obtain statements that could be used against the defendant should the defendant testify at trial.
The Harris Court was understandably concerned that the shield of Miranda v Arizona (384 US 436) not be perverted to allow a defendant at trial to commit perjury. The Court was aware that if an impermissible statement was suppressed for all purposes, a defendant could with impunity perjure himself with no recourse to the prosecution to inform the jury of that peijury.
In considering constitutionally based rules and applying the spirit behind them, courts should not just think of “what has been, but of what may be. Under any other rule a constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general principles would have little value, and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality. And this has been recognized. The meaning and vitality of the Constitution have developed against narrow and restrictive construction.” (Weems v United States, 217 US 349, 373.)
Indeed, even the Harris Court recognized the possibility that the rule enunciated in their decision might encourage impermissible police conduct. However, they felt that possibility was speculative. In the instant case, there is nothing speculative about the police behavior. Clearly, the actions of the officers were with full knowledge of the significance of Harris and the use of the potential rebuttal testimony at trial.
*365 The Harris Court assumed, that the exclusionary rule itself would have sufficient deterrent effect on police conduct. The very fact that the impermissible statement would not be allowed in the prosecution’s case-in-chief would be a sufficient deterrent to police questioning in violation of assertion to a defendant’s right to counsel and to his right to remain silent (Harris, supra at 225).
That certainly was not the case in this investigation. This was not an instance where police questioning elicited statements that are inadmissible because of some “technical” or inadvertent violation of the Miranda doctrine. This is a case where the conscious objective of the police, based on apparent training and encouragement to do so, was to elicit statements from Nelson in clear violation of his rights to counsel and silence. Here there was no attempt to “scrupulously honor” the defendant’s assertion of those rights (Michigan v Mosley, 423 US 96; People v Kinnard, 62 NY2d 910; People v Wander, 47 NY2d 724).
As the Weems Court said and this court noted above, with such procedures “[r]ights declared in words might be lost in reality” (Weems, supra at 373). Accordingly, the statements attributed to the defendant Nelson after his invocation of his Miranda rights are hereby suppressed.
This ruling does not whittle away at the Harris decision. In fact, it supports and encourages the spirit and goal of that decision to properly balance a defendant’s rights under the Constitution with the prosecution’s right to present their case at trial. This is a fact-specific decision that applies to this interrogation where the police, by conscious design and plan, ignored the assertion of basic constitutional rights with a view towards possible use of otherwise impermissible evidence at trial. This decision does not proclaim that no statements made by suspects to police after assertion of their Miranda rights may be used against them in rebuttal if they testify at trial. It simply serves notice to law enforcement that if statements are taken with a view towards that end that are violative of the defendant’s rights, the suppression court will scrutinize the circumstances under which those statements were taken and make appropriate balancing judgments as to their future use at trial. With that analysis in mind, the statements taken here may not be used for rebuttal at trial.