================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 147
The People &c.,
            Respondent,
        v.
Charles K. Wilson,
            Appellant.


            Kathleen P. Reardon, for appellant.
            Robert J. Shoemaker, for respondent.


PIGOTT, J.:

        In People v Harris (25 NY2d 175 [1969], affd 401 US 222
[1971]), this Court held that a statement obtained in violation
of a defendant's rights under Miranda v Arizona (384 US 436
[1966]) may be utilized for impeachment purposes on the cross-
examination of a defendant whose testimony is inconsistent with

                            - 1 -

the illegally obtained statement (see Harris, 25 NY2d at 177; see also People v Johnson, 27 NY2d 119, 121-122 [1970], cert denied 401 US 966 [1971]; People v Kulis, 18 NY2d 318 [1966]).  In this appeal, defendant advocates for a bright-line rule that would preclude the People from utilizing on cross-examination or rebuttal any statement provided by the defendant to the police after the defendant refuses to waive his Miranda rights.  We decline defendant's invitation to adopt such a rule, and affirm the order of the Appellate Division.

I.

On September 14, 2006, at approximately 9:00 p.m., complainant and three children were entering a home they shared when they were confronted by two armed men.  The men demanded that complainant empty his pockets.  Although complainant complied, one of the intruders shot him and one of the children.  The intruders took complainant's wallet and car keys and fled the house.  One of the children locked the door, but an unidentified individual returned, kicked in the front door to gain entry, and shot complainant twice in the head.

Two days after the incident, investigator Matthew Hill showed a photo array to one of the child witnesses.  The child pointed to a photo of defendant and stated that "it kind of looks like him."  Five days later, Hill showed the same witness a different array containing a more up-to-date photograph of defendant, and the child pointed to the photo and said, "that

looks just like him."

On October 11, 2006, Hill prepared a photo array that was shown to complainant, who had since come out of a coma. The photo array utilized the up-to-date photo of defendant. Complainant identified defendant as one of the intruders. Approximately two weeks later, police took defendant into custody. The child witness who had previously identified defendant from the photo array viewed a six-person lineup and identified defendant as one of the armed intruders. Defendant was transported to the public safety building for further questioning.

Prior to interviewing defendant, Hill read defendant his Miranda rights. Defendant stated that he understood the rights and exercised his right not to speak with Hill. At that point, Hill told defendant that he was being charged for the shootings that had occurred on September 14, 2006. According to Hill, defendant "acted surprised like he didn't know what [Hill] was talking about," so Hill apprised defendant of the charges and of the fact that he was being charged with a codefendant. Investigator Brian Tucker, who was also in the interview room, asked defendant if he knew the codefendant, and defendant responded that he did not. Defendant again "acted surprised," so Hill stated, "well, you must know what I am talking about because this guy [the codefendant] . . . had shot himself at some point after the incident." At that point, defendant stated that the

codefendant had not shot himself because "nobody shoots themselves there like that" and acknowledged that he knew codefendant.

In an 11-count indictment, defendant and codefendant were charged with attempted murder in the second degree and various assault, robbery and burglary counts. The People served a CPL 710.30 notice upon defendant concerning defendant's post-Miranda statements. As relevant here, defendant moved for a Huntley/Wade hearing seeking suppression of defendant's statements and the witness identifications. The People withdrew their CPL 710.30 notice and stipulated that they would utilize defendant's statements only for cross-examination purposes should defendant choose to testify. In response, defendant moved to convert his suppression motion to a preclusion motion, arguing that should defendant opt to testify, the People should be precluded from using the statements he made to police for impeachment purposes because they were obtained in violation of a constitutional right.

At a hearing on the issue, Hill and Tucker testified as to the substance of defendant's post-Miranda statements. Defense counsel argued that it was the "plan or design" of the police to knowingly continue to question defendant after he had invoked his Miranda rights so as to preclude defendant from taking the stand. Defense counsel claimed that if it could be shown that the investigators continued interrogating defendant in bad faith,

then the People could not use any evidence from that impropriety on cross-examination or rebuttal. County Court permitted defense counsel to question the investigators about the circumstances surrounding the making of the statements. During that testimony, Hill acknowledged that once defendant invoked his Fifth Amendment rights, he knew that defendant did not wish to speak. Hill also stated that he knew that once a defendant invokes such rights anything the defendant states may not be used on direct examination, but that statements obtained after the invocation of Miranda could be used on cross-examination or rebuttal. County Court, finding defendant's statements to have been voluntarily made, denied defendant's motion to preclude the People's use of the statements on cross-examination or rebuttal.

The matter proceeded to trial. Defendant did not testify or call any witnesses. He was ultimately convicted of, among other things, attempted murder in the second degree, and sentenced to an aggregate term of 50 years. The Appellate Division modified by reversing that part of the judgment convicting defendant of attempted murder in the second degree, dismissing one burglary count and ordering the sentences on the remaining counts to run concurrently as to each other (resulting in an aggregate sentence of 25 years), and otherwise affirmed (120 AD3d 1531, 1532 [4th Dept 2014]). As relevant here, the Appellate Division held that County Court "did not err in determining that defendant's statements to the police during a

brief exchange, made by defendant after he refused to waive his Miranda rights, were voluntary and thus were admissible for impeachment purposes" (id. at 1533 [citations omitted]).[1]

A Judge of this Court granted defendant leave to appeal.

## II.

It is undisputed that the statements made by defendant to police were made after he had invoked his Miranda rights, and, thus, the People were prohibited from using the statements in their case-in-chief (see People v Wise, 46 NY2d 321, 329 [1978]; Harris, 25 NY2d at 177). Defendant argues that this rule does not go far enough, and advocates for a rule that precludes the People from utilizing post-invocation statements on cross-examination or rebuttal for impeachment purposes should a defendant opt to testify.

This Court has long held that if a statement made by the defendant to the police is voluntary, it may be used for impeachment purposes; but if a statement is involuntary, it will not be admissible, even if it may be deemed reliable (see People v Maerling, 64 NY2d 134, 140 [1984]; People v Walker, 110 AD2d

---

[1] Defendant also appealed County Court's determination that the manner in which the photo arrays were shown to complainant and the child witness, and the line-up procedure employed by the police, were not unduly suggestive. The Appellate Division held that County Court did not err in refusing to suppress the identification evidence (120 AD3d at 1533). We have considered defendant's challenge to that determination and conclude that it is without merit.

730, 732 [2d Dept 1985], affd for reasons stated 67 NY2d 776 [1986] [where statements are involuntarily obtained through coercion, such statements are inadmissible for use on cross-examination or rebuttal]).

The rule proposed by defendant would render inadmissible for impeachment purposes any statement elicited by law enforcement after the defendant invokes the right to remain silent. The adoption of such a rule, however, would require us to overrule our own decision in Harris and its progeny, and would effectively sanction perjury on the part of a testifying defendant by permitting the defendant to offer testimony that is inconsistent or at odds with the defendant's prior statements (see Harris, 401 US at 226; see also Kulis, 18 NY2d at 323).

Here, County Court determined that the statements were voluntary and the Appellate Division affirmed that determination. Hill acknowledged that he was aware of the Harris decision and understood that defendant's post-Miranda statements could not be used by the People in their case-in-chief but could be utilized by the People for impeachment purposes. However, there is nothing in the record to support defendant's contention, in reliance on People v Nelson (189 Misc 2d 362, 365 [Monroe County Ct 2001]), that Hill consciously circumvented defendant's invocation of his Fifth Amendment rights or otherwise rendered defendant's statements involuntary as a matter of law. Thus, it cannot be said that County Court abused its discretion in denying

defendant's motion to preclude the People from utilizing the statements on cross-examination or rebuttal.  Accordingly, the order of the Appellate Division, insofar as appealed from, should be affirmed.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order, insofar as appealed from, affirmed.  Opinion by Judge Pigott.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein and Garcia concur.  Judge Fahey took no part.

Decided October 25, 2016