[Cite as *State v. McClelland*, 2021-Ohio-3018.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MONTEL M. MCCLELLAND,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 20 JE 0017

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 19 CR 2

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane M. Hanlin,* Prosecutor*,* 16001 State Route 7, Steubenville, Ohio 43952, for Plaintiff-Appellee and

*Atty. Felice Harris,* Harris Law Firm, LLC, 923 E. Broad Street, Columbus, Ohio 43205 for Defendant-Appellant.

Dated:  September 1, 2021

_____

**Robb, J.**

{¶1}    Defendant-Appellant Montel M. McClelland appeals the judgment of the Jefferson County Common Pleas Court entered after he pled guilty to multiple felonies. He contends his statement containing the word "innocence" at the plea hearing equated to an *Alford* plea.  He alleges the court failed to timely inquire whether his reasons for pleading guilty while protesting innocence were rational and failed to review the strength of the state's evidence, urging the *Alford* issue could not be cured once the court accepted the plea and proceeded to the sentencing portion of the hearing.  Appellant also argues the court failed to advise him of the effect of a guilty plea.  For the following reasons, the trial court's judgment is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2}    According to the state's recitation of facts below, Appellant punched out the window of his girlfriend's car at a gas station in Steubenville on December 23, 2018.  She fled, but he followed her to the Mingo Junction Police Department.  He can be seen on video trying to gain access to her location at the police department (in a very agitated manner).  Two Mingo Junction police officers tried to calm him; they also explained he could not have contact with the victim and could not leave the station as Steubenville police officers were on the way to investigate the incident at the gas station.

{¶3}    Appellant can then be seen on video charging at the first officer, striking him in the face, and shoving a fireman into an ambulance.  The officer fired his Taser but missed.  Appellant charged the officer again, brought him to the ground, and repeatedly struck him in the head.  The other police officer and two firemen all tried to assist.  Even after the Taser made contact with Appellant, he would not stop and was in a rage.  A fireman expressed that he had never seen anyone with that amount of rage.

{¶4}    The police officer who was on the ground under Appellant felt pressure on his gun belt and could feel a hand on his weapon.  He yelled that Appellant was trying to get his gun, and this was heard by the other responders.  After Appellant was subdued, the first officer noticed two of the three snaps on his gun holster had been undone, which further supported his announcement that Appellant was trying to obtain his gun.

<u>Case No. 20 JE 0017</u>

{¶5}     On January 8, 2019, Appellant was indicted on eight charges.  Count one was aggravated robbery for knowingly attempting to remove a deadly weapon from a police officer who was acting within the course and scope of the officer's duties and the offender knew or had reason to know he was a law enforcement officer; this count was a first-degree felony.     R.C. 2911.01(B).   Counts two through five charged assault for knowingly causing or attempting to cause physical harm to each of the four individuals who were performing their official duties; these counts were fourth-degree felonies.  R.C. 2903.13(A),(C)(5).  Appellant was also indicted for domestic violence (a fourth-degree misdemeanor), aggravated menacing (a first-degree misdemeanor), and criminal damaging (a second-degree misdemeanor).

{¶6}     Appellant was appointed counsel who represented him at the arraignment and the March 4, 2019 pretrial, which was set for the purpose of exploring a negotiated plea.   The trial date was continued and another pretrial was set for the next month. Appellant then appeared at the April pretrials represented by retained counsel.  A May, 2019 pretrial was rescheduled as the parties were engaged in plea negotiations.  Further pretrials for plea exploration were held in June, July, and August 2019.  At the September 24, 2019 pretrial, the court was informed Appellant rejected a plea offer made by the state. The court said the October 3, 2019 trial date, which had been set in August after being continued multiple times, would be maintained.

{¶7}     On October 2, 2019, the state amended the indictment to eliminate the three misdemeanors as Appellant already pled guilty to them in the municipal court.  Appellant agreed to plead guilty to the five felony counts, and the parties agreed to jointly recommend a sentence of three years on count one and eighteen months on counts two through five, concurrent with each other but consecutive to count one for a total of 4.5 years in prison.   The court accepted the plea and imposed the jointly recommended sentence.  The sentencing entry was filed on October 8, 2019.

{¶8}     This court granted leave to file a delayed appeal.  Appellant sets forth two assignments of error, which both rely on his argument that his plea should be considered an *Alford* plea.

## GENERAL LAW ON ALFORD PLEA

{¶9}    A standard guilty plea consists of a waiver of trial and an express admission of guilt; the express admission of guilt, however, is not constitutionally required. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).  The United States Supreme Court held a defendant can knowingly, intelligently, and voluntarily consent to be sentenced without a trial "even if he is unwilling or unable to admit his participation in the acts constituting the crime" and even if he offers a "plea containing a protestation of innocence."  *Id.*  This became known as the "*Alford* plea."

{¶10} In *Alford*, the Court said a plea with a protestation of innocence can be upheld where the "defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt."  *Id.* at 37.  The Court added:

> When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered, * * * its validity cannot be seriously questioned.  In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it.

*Id.* at 38.  *See also State v. Post*, 32 Ohio St.3d 380, 387, 513 N.E.2d 754 (1987) ("no constitutional error was found in accepting a guilty plea which contained a protestation of innocence, if the defendant intelligently concludes that his interests require entry of a guilty plea and if the record before the court contains strong evidence of guilt").

{¶11} The United States Supreme Court favorably cited cases which "properly caution that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea * * * and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence." *Alford*, 400 U.S. 25 at fn. 10.  *See also Post*, 32 Ohio St.3d at 387 (calling this dicta).

{¶12}    A defendant may knowingly, intelligently, and voluntarily decide his interests are best served by entering a guilty plea while protesting his innocence where

he fears the result of a jury trial and/or fears a longer sentence in the absence of the negotiated plea agreement. *State v. Hart*, 7th Dist. Belmont No. 14 BE 0025, 2016-Ohio-1008, ¶ 15

ASSIGNMENT OF ERROR ONE:  WAS HEIGHTENED INQUIRY REQUIRED?

**{¶13}** Appellant sets forth two assignments of error.  His first of assignment of error generally contends:

"Montel McClelland's plea was not knowingly, intelligently, and voluntarily made in violation of the Ohio and United States Constitutions.

**{¶14}** Appellant initially argues his plea should be considered an *Alford* plea.  It is claimed a statement he made before he entered his guilty plea was the equivalent of a protestation of his innocence, which triggered the trial court's heightened standard of inquiry applicable to an *Alford* plea.  If the plea was subject to this standard, Appellant then states the court failed to engage in a sufficient inquiry under *Alford* during *the plea portion* of the hearing.  He urges the failed inquiry cannot be cured once the court moves to the sentencing portion of the hearing.

**{¶15}** The state urges the trial court was not faced with an *Alford* plea and the word "innocence" used by Appellant during the plea portion of the hearing must be read in context of the entire plea colloquy.  The state alternatively suggests any lacking inquiry before the court initially accepted the plea was cured at the same hearing before the court imposed sentence.  The state points out it recited strong evidence against Appellant twice and defense counsel acknowledged the first officer testified at the preliminary hearing that two of the three clips were off of his holster and other witnesses said they heard the officer say "He's on my gun."  *See also* Statement of the Case (above, setting forth the state's evidence).  The state additionally points out Appellant rationally disclosed that even though he "did not try to rob this officer of his firearm," he was "scared to go to trial cause I'm facing a lot - - a lot more time than was offered to me.  If I lose, I'd be away from my family a lot longer. I'm scared * * *." (Tr. 24).

**{¶16}** Appellant does not dispute the later recitation of evidence plus the totality of the statements by Appellant and defense counsel *would have* satisfied *Alford* if it all occurred *before the plea was accepted*.  It is also noted Appellant does not use his statement ("I did not try to rob this officer of his firearm") made at the sentencing portion

of the hearing to show he was making an *Alford* plea because it occurred after the plea was accepted and after the court specifically said it was moving on to sentencing. As Appellant recognizes, it is well settled that the *Alford* inquiry is not triggered where a protestation of innocence is made after the guilty plea is made and accepted. *State v. Gales*, 131 Ohio App.3d 56, 60, 721 N.E.2d 497 (7th Dist.1999); *State v. Corbett*, 8th Dist. Cuyahoga No. 99649, 2013-Ohio-4478, ¶ 7.

{¶17} We turn to the plea colloquy containing the statement Appellant claims triggered *Alford*. After the court engaged in the plea colloquy on the constitutional and non-constitutional rights in Crim.R. 11 and before asking Appellant how he wished to plead, the court decided to delve into Appellant's satisfaction with his attorney:

THE COURT: Let's talk about your attorney for a minute. Has your attorney done all of the things that you've asked him to do so far?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything that you would like done that's not done, like talk to some witness, file some motion, explain something to you, anything at all? Well, you seem to be thinking about it. If there's something on your mind, let me know what it is.

THE DEFENDANT: There was another witness at the - - at the scene of the crime - - and

THE COURT: I'm having a hard time hearing you.

THE DEFENDANT: There was another witness at the scene of the crime and no one's talked to him.

THE COURT: Okay.

THE DEFENDANT: **I mean it might help to prove my innocence on Count One, aggravated robbery.**

[DEFENSE COUNSEL]: Your Honor, with regard - - Mr. McClelland didn't know the person's last name. I talked to the person that did know and she wouldn't give me her name saying that she was a juvenile.

THE COURT: Okay. * * * Well, here are your - - I mean, if that's a problem to you, your choices are you can go through with this plea or you can say

"No, I don't want to go through with this plea and I want my trial tomorrow" and we'll do that. It's whichever you want to do. So, do you have a thought on that?

THE DEFENDANT: Just scared.

THE COURT: Okay. Well, I understand you're scared and you have two choices and neither one of them is real good but you are going to have to pick between going through with the plea or going to trial tomorrow. Those are your choices.

THE DEFENDANT: Take the plea. Go with the plea, Your Honor.

THE COURT: Excuse me?

THE DEFENDANT: I said we'll go with the plea Your Honor.

THE COURT: You're going to go with the plea?

THE DEFENDANT: Yeah.

THE COURT: Is there anything you wish your attorney would have done differently?

THE DEFENDANT: No, Your Honor.

THE COURT: Is it fair to say that you're satisfied with your representation so far?

THE DEFENDANT: Yes, sir.

THE COURT: Are there any questions that you have about anything that we're doing here?

THE DEFENDANT: No, sir.

THE COURT: Are you sure?

THE DEFENDANT: I'm sure.

THE COURT: And how do you want to plead?

THE DEFENDANT: Guilty.

THE COURT: Okay. The record will reflect the defendant has just signed his new plea of guilty here in open court. I find from the dialogue that I had with the Defendant that his new plea is knowingly, intelligently, and voluntarily entered. It's accepted. **Defendant is found guilty** of Counts One through Five **and we move to sentencing**. Anything further?

Case No. 20 JE 0017

(Emphasis added.) (Tr. 18-21). (At that point, the state recited the evidence against Appellant for the first time, defense counsel added the confirmatory evidence from the preliminary hearing, and the court heard Appellant specify he did not attempt to rob the officer of his gun but was scared to go to trial because he was facing more time than the state's offer and was afraid to lose and be away from his family longer, which prompted the court to ask the state to recite the evidence as to the gun again.)

{¶18} *Alford* applies when "a defendant pleads guilty yet maintains actual innocence of the charges." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 13. *See also In re Kirby*, 101 Ohio St.3d 312, 2004-Ohio-970, 804 N.E.2d 476, ¶ 3 (the *Alford* principles provide a way for an adult defendant to "both enter a guilty plea to a charge and simultaneously maintain his innocence"). "In order for a valid *Alford* plea to take place, the defendant must protest innocence at the same time he enters his guilty plea." *State v. Holloway*, 7th Dist. Mahoning No. 17 MA 0048, 2018-Ohio-5393, ¶ 21, citing *State v. Johnson*, 8th Dist. Cuyahoga No. 103408, 2016-Ohio-2840, ¶ 27.

{¶19} In other words, to trigger *Alford*, the defendant must "actually state his innocence on the record *when entering a guilty plea*." *Holloway*, 7th Dist. No. 17 MA 0048 at ¶ 21 (adding the emphasis), quoting *Johnson*, 8th Dist. Cuyahoga No. 103408 at ¶ 27. In *Holloway*, we cited *Swoveland* where the Third District pointed out if the defendant interjects protestations of innocence into the plea proceedings but then recants them, the plea is not an *Alford* plea. *State v. Swoveland*, 3d Dist. Van Wert No. 15-17-14, 2018-Ohio-2875, ¶ 17-18, citing *State v. Padgett*, 67 Ohio App.3d 332, 337-338 (2d Dist.1990).

{¶20} The case at bar is not similar to our *Redmond* case cited by Appellant. In that case, the written plea was captioned as an *Alford* plea, and the trial court said three times at the plea hearing that it was an *Alford* plea. *State v. Redmond*, 7th Dist. Mahoning No. 17 MA 0068, 2018-Ohio-2778, ¶ 5, 13. The *Redmond* court accepted the *Alford* plea, and there was no dispute as to whether the plea was an *Alford* plea.

{¶21} We conclude Appellant's statement at page 19 of the transcript was not an actual protestation of innocence which would trigger a heightened inquiry, especially when read in context. He merely stated an unknown juvenile witness "might help to prove my innocence" on the first count. He was unsure and did not insist he was innocent. It

is not unusual for a defendant to wish his attorney or the police would find evidence to help show his "innocence," whether or not he were actually innocent.

**{¶22}** Moreover, at the beginning of the plea colloquy, Appellant said he understood by his plea of guilty he would be admitting his guilt and waiving all defenses after which the court would find him guilty and sentence him that day. (Tr. 6). The disputed statement thirteen pages later was not a protestation of actual innocence. Rather, it was a pressured observation about a possible failure of defense counsel (and/or the state) to thoroughly investigate an alleged eyewitness. It was made only after the court insisted Appellant consider every item he wished would have been done that was not (which could have encompassed acts or omission by both defense counsel and state actors); the court specifically prompted Appellant by giving the example of "talk to some witness * * *."

**{¶23}** After Appellant's statement on page 19, defense counsel explained he in fact (albeit unsuccessfully) attempted to identify this potential witness, a juvenile whose last name Appellant did not know. Appellant then voiced satisfaction with counsel's representation and answered there was nothing he wished his attorney would have done differently. The court reminded Appellant he had the choice, instead of taking the plea, to proceed with the trial scheduled for the next day (after multiple pretrials for plea negotiations and continuances). Appellant said he was "[j]ust scared" and chose to "Take the plea. Go with the plea, Your Honor." The court asked two times if he had any questions. Appellant then, without reservations, signed a guilty plea and orally declared that he pled guilty. He did not indicate he was "unwilling or unable to admit his participation in the acts constituting the crime." *See Alford*, 400 U.S. at 37.

**{¶24}** Under the totality of the circumstances, a heightened inquiry was not required because Appellant did not actually protest his innocence while pleading guilty.

**{¶25}** Even if the statement at page 19 of the transcript (no one talked to a witness who "might help prove his innocence") should have been construed as a protestation of innocence made contemporaneous with the guilty plea, the trial court cured the issue prior to sentencing Appellant. As aforementioned, the state's brief alternatively presumes the information presented at the sentencing portion of the hearing cured any inquiry issue, noting the state twice recited strong evidence against Appellant and he further disclosed

he entered the plea due to fear of the longer sentence he was facing in the absence of the negotiated plea.

**{¶26}** Appellant replies by pointing out the state does not cite law in support of the position that an inquiry occurring at the sentencing portion of the hearing can save the plea. Yet, the law cited by Appellant does not prohibit a trial court from asking for more information and immediately reconsidering its acceptance of the plea at the same plea/sentencing combined hearing (and then re-accepting the plea).

**{¶27}** The state's argument is not the mere citation to items placed on the record at a later sentencing hearing in an attempt to show a lack of prejudice and thereby seek to retroactively cure a missing plea inquiry without the trial court's consideration of the topic. Here, the trial court actually reconsidered whether to "accept" the plea on the record within minutes of the initial decision. It is not improper for a trial court to reopen a plea hearing at the adjacent sentencing portion of the hearing if the court realizes or is informed the defendant may have earlier intended to assert actual innocence or if the court is concerned the record should be better developed for purposes of *Alford*.

**{¶28}** The *Alford*-related information was presented at the sentencing portion of the hearing where: the state immediately recited the evidence; defense counsel added a disclosure on incriminatory evidence from the preliminary hearing; Appellant specified that he did not try to rob the officer of his gun and explained his fear of trial and a longer sentence; the trial court noted Appellant's statement as to the gun; the court instructed the state to explain the evidence as to the gun; and the state recited the evidence of Appellant's guilt on count one. The trial court then concluded: "Well, I find that had the case gone to trial there would have been sufficient evidence for a jury verdict of guilty on Count One. I'm going to - - the Defendant's plea is knowingly, voluntarily, and intelligently entered. I'm going to accept. The - - he's found guilty of Count One through Five, like I've already said." (Tr. 26-27).

**{¶29}** The trial court did not subsequently re-ask Appellant if he still wished to plead guilty. Yet, the *Alford* inquiry involves *the court's determination* that a plea should be accepted based on the gathering of certain information, and the trial court did reconsider its own acceptance of the plea. The evidence and the defendant's reasons are placed in the record *for the trial court* to determine whether the plea was entered

knowingly, intelligently, and voluntarily in spite of a protestation of innocence made with the guilty plea (and for the appellate court to review that decision if appealed). The *Alford* inquiry is not premised on the provision of notifications to the defendant, unlike information set forth in Crim.R. 11 (such as constitutional rights, maximum sentence, etc.)

**{¶30}** In many *Alford* cases, a defendant is provided a full colloquy and is then asked how he pleads, to which he may answer something like, "I'm innocent, but I'm pleading guilty." The court can then ask the state for recitation of some evidence and ask the defendant whether he was pleading due to the strength of the evidence and the fear of a longer sentence. But, there is no indication the court then must have the defendant repeat how he pleads before announcing its decision to accept the plea. In accordance, we alternatively find any *Alford* inquiry issue triggered by Appellant's statement at page 19 of the transcript was almost immediately cured when the trial court essentially reconsidered its decision on whether to accept the plea and decided to accept it after hearing the additional information related to *Alford*.

**{¶31}** Under either of the alternative holdings, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO: EFFECT OF GUILTY PLEA</u>

**{¶32}** Appellant's second assignment of error generally contends:

"The trial court abused its discretion in accepting Montel McClelland's guilty plea."

**{¶33}** Appellant claims the trial court failed to explain the effect of the guilty plea was a complete admission of guilt under Crim.R. 11. He claims the court completely failed to inform him of the effect of his plea, and thus, he was not required to show prejudice. He relies on his argument that he essentially entered an *Alford* plea to avoid the implications of the Supreme Court's *Griggs* case, which presumes a defendant understands the effect of a guilty plea and presumes a lack of prejudice in the absence of an assertion of actual innocence.

**{¶34}** A defendant's decision to enter a plea must be knowing, intelligent, and voluntary. *State v. Dangler*, 62 Ohio St.3d 11, 2020-Ohio-2765, 64 N.E.3d 286, ¶ 10. By providing the procedure a trial court is to use when accepting a guilty plea, Crim.R. 11 allows a reviewing court to ensure the plea has these qualities. *Id.* at ¶ 10-11. On the effect of the guilty plea, Crim.R. 11 initially explains:

<u>Case No. 20 JE 0017</u>

(B) Effect of Guilty or No Contest Pleas. With reference to the offense or offenses to which the plea is entered:

(1) The plea of guilty is a complete admission of the defendant's guilt.

* * * [applicable to a no contest plea]

(3) When a plea of guilty or no contest is accepted pursuant to this rule, the court, except as provided in divisions (C)(3) and (4) of this rule, shall proceed with sentencing under Crim. R. 32.

Crim.R. 11(B)(1),(3).[1]

**{¶35}** Crim.R. 11(C)(2) then provides the court shall not accept a guilty plea in a felony case "without first addressing the defendant personally and * * * (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence."

**{¶36}** This subdivision relates to non-constitutional rights. A failure with regards to a non-constitutional right requires a showing of prejudice to invalidate the plea, unless the trial court completely failed to comply with the advisement. *Dangler*, 62 Ohio St.3d 11 at ¶ 14-16 (while a failure with regards to a constitutional right in subdivision (C)(2)(c) does not require a showing of prejudice). To show prejudice, the defendant must demonstrate the plea would not have been made but for the court's failure. *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Prejudice must be demonstrated on the face of the record. *Dangler*, 62 Ohio St.3d 11 at ¶ 24.

**{¶37}** "The effect of the guilty plea as a complete admission to the charges in the plea agreement is an easy to comprehend concept." *State v. Oliver*, 7th Dist. Mahoning No. 20 MA 0028, 2021-Ohio-1247, ¶ 24. Accordingly, it has been concluded: "a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415,

---

[1] The cited Crim.R. 32(A) provides, "Sentence shall be imposed without unnecessary delay" (and bail or jail can be utilized pending sentencing).

814 N.E.2d 51, ¶ 19 (upholding the plea despite the total failure to advise the defendant the guilty plea is a complete admission of guilt).

**{¶38}** Appellant reasons these presumptions (of understanding and lack of prejudice) set forth in *Griggs* would not apply to him because of his first argument in the prior assignment of error stating he asserted actual innocence when pleading guilty. However, we found in the prior assignment of error that Appellant did not assert actual innocence when pleading guilty.

**{¶39}** Regardless, we need not presume Appellant already knew a guilty plea was an admission of his guilt as the trial court provided an explanation on the effect of the guilty plea under Crim.R. 11(B)(2)(b). Contrary to Appellant's contention, *there was not a complete failure to advise him of the effect of a guilty plea*. The trial court advised Appellant: "But by your plea of guilty you would be admitting guilt, you're waiving or giving up whatever defenses you may have, you will be found guilty and sentenced today. Do you understand that?" Appellant responded, "Yes, Your Honor." (Tr. 6).

**{¶40}** Appellant does not actually argue he was prejudiced by the specific wording on page 6 of the transcript or claim this specific wording totally failed to comply with the rule; instead, the brief failed to acknowledge this part of the colloquy. Still, we note the trial court failed to use the word "complete" (or here "completely") before stating he would be "admitting guilt" by the plea of guilty.

**{¶41}** However, the failure to use the exact language in Crim.R. 11(B)(1) is not a complete failure to comply as the key concept is that the guilty plea constitutes an admission of guilt. There is no indication of prejudice by the omission of the adjective complete (or the adverb completely) when telling Appellant if he pleads guilty he will be admitting guilt, waiving all defenses, found guilty, and sentenced that day. *See, e.g., State v. Downing*, 2d Dist. Greene No. 2019-CA-72, 2020-Ohio-3984, ¶ 29 (finding substantial compliance and no prejudice where trial court omitting the word "complete" when explaining "a plea of guilty is an admission of guilt"); *State v. Dotson*, 12th Dist. Preble No. CA2007-11-025, 2008-Ohio-4965, ¶ 23-26 (rejecting the argument on the missing word "complete" in the advisement, "When you plead guilty you are admitting your guilt"). This assignment of error is overruled.

Case No. 20 JE 0017

{¶42} For the foregoing reasons, the trial court's judgment is affirmed.

Donofrio, P J., concurs.

Waite, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**