[Cite as *State v. Callahan*, 2024-Ohio-5621.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                                  Court of Appeals No.  WD-24-012

        Appellee                                          Trial Court No. 2023 CR 0064

v.

Ruby Callahan                                            **DECISION AND JUDGMENT**

        Appellant                                         Decided:  November 27, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Ruby Callahan, appeals the January 12, 2024 judgment of the Wood County Court of Common Pleas, convicting her of two counts of passing bad checks and sentencing her to community control.  For the following reasons, we affirm the trial court judgment.

## I. Background

{¶ 2} In an indictment issued February 16, 2023, Ruby Callahan was charged with grand theft, a violation of R.C. 2913.02(A)(3) and (B)(2), a fourth-degree felony (Count 1); grand theft of a motor vehicle, a violation of R.C. 2913.02(A)(3) and (B)(5), a fourth-degree felony (Count 2); and two counts of passing bad checks, violations of R.C. 2913.11(B) and (F), fourth-degree felonies (Counts 3 and 4). Callahan entered a plea of not guilty.

### A. The Plea Hearing

{¶ 3} Callahan appeared for a final pretrial on October 2, 2023. The State presented her with a plea offer, pursuant to which it would dismiss Counts 1 and 2 in exchange for Callahan's plea of guilty to Counts 3 and 4. Callahan rejected the plea agreement, and its terms were placed on the record. Callahan told the court that she had declined the offer because "I never stole the vehicle" and said that she wished to go to trial. The State withdrew the offer, and the trial date was confirmed. The court recessed.

{¶ 4} About 90 minutes later, the court recalled the case because Callahan decided to accept the plea offer. Defense counsel informed the court that Callahan would "withdraw [her] prior plea of not guilty and enter a guilty plea to counts 3 and 4." The trial court told Callahan: "I'm going to ask you a series of questions so that I know that you understand what you're doing today and that you're doing so voluntarily."

{¶ 5} In response to the court's questions, Callahan said that she has four college degrees, understands both spoken and written English, and was not under the influence of

2.

drugs or alcohol. She told the court that she sees a doctor for a brain tumor, but she maintained that her treatment did not prevent her from understanding what she was doing. Callahan assured the court that she understood the proceedings, her attorney explained her constitutional rights, she was satisfied with his representation, and other than the terms that had been placed on the record, no threats or promises had been made to induce her to change her plea.

{¶ 6} In response to additional questions from the court, Callahan said that she was offering her plea voluntarily, she understood that it would be a complete admission to Counts 3 and 4 (passing bad checks), she understood the nature of those charges, and she understood the maximum penalties. Callahan expressed that she did not understand post-release control, so that was explained to her, and she confirmed her understanding.

{¶ 7} The court informed Callahan of the constitutional rights she was waiving by entering a plea of guilty: the presumption of innocence, the State's obligation to prove her guilt beyond a reasonable doubt, the right to a speedy and public trial to the court or a jury, the right to compel the production of evidence and call witnesses, the right to an attorney, and the right to testify or not testify. Callahan indicated that she understood all these rights. The court then asked her if she wanted it to repeat any of the information. Callahan responded: "I'd ask you to go back to the beginning, but I won't. I'm okay, yes, ma'am." This led to the following exchange:

> The court: Well, you're pleading guilty to two felonies, and if there's something that you don't understand, I want to make sure that you understand what you're doing today. . . .

3.

Callahan:  I didn't understand a lot of it, like –

The court:  Okay.

Callahan:  Like, I understand what they're saying.  I did write the check, I never denied that.

{¶ 8} The court suggested that they take a break so that defense counsel could go over the plea paperwork again with Callahan.  When they went back on the record, the court again inquired:

The court:  You had an opportunity to speak with your attorney, right?

Callahan:  Yes, ma'am.

The court:  And [he] answered any questions you may have had up to this point with respect to the pleas?

Callahan:  Yes, ma'am.

The Court.  Okay.  So I think I was just finishing up explaining your constitutional rights to you.

Callahan:  Yes, ma'am.

{¶ 9} The court informed Callahan of her appellate rights, then turned its attention to the plea documents.  Callahan confirmed that she had signed and initialed the documents, including the jury-trial waiver, and her attorney had explained and answered questions about its contents.  The court ascertained that Callahan understood the maximum sentences and her obligation to make restitution under the agreement, and that the court was not bound by any sentencing recommendation the parties may make.

4.

**{¶ 10}** After the court completed this portion of the plea colloquy, it called for an explanation of the circumstances of the offenses. The State explained:

> Had this case proceeded to trial, the State would have shown the following: That the victims in this case, a family, posted for sale three items, a 2006 Ford truck, a fifth-wheel camper for that truck, and a utility trailer. This defendant did agree to purchase those items for the sum of $12,300. And, in fact, on September 1st, the defendant wrote a check for that amount, $12,300, for those three items. The check was check number 1183. However, when the victims went to the bank to try to cash it, the bank refused to cash the check because it wasn't written out correctly.
>
> The victims reached out again to the defendant to see if they could get another check that would be written out correctly, and went so far as to go to the defendant's home to pick her up to try to help her facilitate the sale. When they got there, they saw she was moving out with her son, a 15-year-old at the time, who is autistic, and out of the kindness of their hearts, invited this defendant and her son to stay with them at their personal home, which they did.
>
> During this time, the victim drove the defendant to Flat Rock, Michigan, which was the closest Bank of America, again, going out of their way to help this woman facilitate the sale, where another check was written out and handed and given to the victims. The next day the victims realized that the defendant took the truck – which they gave her the paperwork and the title, she took the truck and her son and just left, effectively moved out of the victims' home, which they had graciously opened up to the defendant.
>
> They tried to contact the defendant. They found that they were blocked. They couldn't get in contact with this defendant. And, of course, Judge, the second check, which was dated September 2nd, check 1186, was returned for insufficient funds. And the State believes that that's what it would have shown. And this happened in Wood County.

**{¶ 11}** The trial court asked defense counsel if this was his understanding from the discovery, whether he believed the facts would support a conviction of Counts 3 and 4, whether he believed that Callahan understood her constitutional rights, and whether he

believed that her plea was being entered knowingly, voluntarily, and intelligently.
Defense counsel responded affirmatively. The court once again addressed Callahan.

> The court: The facts that [the assistant prosecutor] placed on the record are the basis upon which there are facts to support a conviction. Is that what happened, ma'am?

> Callahan: I disagree with it. But, Your Honor, I'm going through a lot with my chemo, I'm just tired and I just want it done.

> The court: So you're pleading to two counts of passing bad checks. Do you understand that?

> Callahan: Yes, ma'am.

> The court: All right. And you understand that there are facts sufficient to support a guilty plea?

> The defendant: That part I don't, but I just want this over with.

{¶ 12} The trial court asked defense counsel again whether he talked to Callahan about the facts that would support a conviction and whether he believed she understood. Counsel said that he had spoken with her and did believe she understood "until she's indicated on the record that maybe she disagrees." Callahan spoke again:

> Callahan: No, I just – I disagree with the whole thing from the beginning, I think it should not have come to this. But it is what it is and I agreed when he brought me the paperwork and explained everything to me.

> The court: Okay. You're pleading to passing a bad check, that you issued or transferred or caused to be issued or transferred a check with the purpose to defraud two individuals, one of them, [M.H.] –

> Callahan: I don't – I've met [M.H.], but – yes, ma'am.

> The court: Okay. -- knowing that it's going to be dishonored or knowing that the person – knowing that the checks are going to be

6.

dishonored or that there would be a stop payment on those checks, that they would not be negotiable checks.

Callahan: Okay. I'm sorry. Repeat that one more time.

The court: Okay. There are two checks.

Callahan: Yes, ma'am.

The court: One is on or about – I'm reading the indictment.

On or about September 1st of 2022, and on or about September 2nd, 2022, so two checks. They were written, according to the indictment, with the purpose to defraud two individuals, [M.H.], and then a [R.G.]. Count 3, check number 1183 dated September 1st, 2022, in the amount of $12,300, payable to [M.H.], knowing that it would be dishonored or that it would not be otherwise negotiable.

Do you recall that? That's what you're pleading guilty to.

Callahan: Yes, ma'am.

The court: Okay. And then on or about September 2nd, 2022, check number 1186 in the amount of [$]12,300, payable to the estate of [E.S.], knowing that that check would be dishonored or was not negotiable.

That's what you're pleading to as well. Do you agree with that?

Callahan: Yes, ma'am.

The court: Okay. Do you have any questions about the plea today?

Callahan: No, ma'am.

{¶ 13} The trial court accepted Callahan's plea, found that she had knowingly, voluntarily, and intelligently entered her pleas and waived her right to a trial, made a finding of guilty, and continued the matter for sentencing.

7.

## B. The Motion to Withdraw Her Plea

{¶ 14} Three days after Callahan entered the guilty plea, she filed a motion to withdraw the plea. She argued that of the nine factors appellate courts commonly consider in deciding whether to allow the withdrawal of a plea, the first, sixth, seventh, eighth, and ninth factors favored granting her motion. She claimed (1) all parties were still available for trial and the State would face no prejudice if the plea was withdrawn; (2) she had maintained her innocence and only entered a plea out of a desire to resolve the matter; and (3) she may have misunderstood how taking a plea might affect possible career opportunities.

{¶ 15} The trial court held a hearing on the motion on November 15, 2023. No testimony was presented—the attorneys merely argued the motion. Defense counsel emphasized that Callahan had maintained her innocence, he questioned whether he had explained things well enough given that there was some indication that she was confused, and he highlighted the fact that the State would not be prejudiced by proceeding to trial. Defense counsel expressed skepticism whether the plea was entered knowingly and voluntarily given Callahan's confusion, lack of understanding, and uncertainty raised multiple times at the plea hearing. He confirmed that there was no new evidence prompting the motion.

{¶ 16} The State responded that there is no absolute right to withdraw one's plea and a mere change of heart is not a legitimate basis for granting a motion to withdraw a plea. As to the nine factors, it maintained that (1) any passage of time could prejudice the

8.

State; (2) Callahan was represented by competent counsel who explained the plea; (3) Callahan received a full Crim.R. 11 hearing; (4) she was granted a hearing on her motion; (5) the court would give full and fair consideration to the motion; (6) the nature of the charges and possible penalties were explained to Callahan; and (7) there is nothing in the record to suggest that Callahan had a defense to the crime and the State has significant evidence that would support her conviction. The State conceded that the motion was made within a reasonable time and that it set forth specific reasons for the motion. It disagreed that concerns about the effect of her plea on potential job opportunities provides a valid basis for withdrawing her plea.

{¶ 17} The trial court took the motion under advisement, but ultimately denied the motion on December 13, 2023.

### C. Sentencing

{¶ 18} The matter proceeded to sentencing on January 8, 2024. The trial court imposed a sentence of two years' community control on each count, subject to various conditions. Callahan's conviction and sentence were memorialized in a judgment journalized on January 12, 2024.

{¶ 19} Callahan appealed. She assigns the following errors for our review:

I.  THE TRIAL COURT ERRED BY ACCEPTING APPELLANT'S GUILTY PLEAS AS THE PLEAS WERE NOT KNOWIINGLY, INTELLIGENTLY, AND VOLUNTARILY ENTERED.

II.  THE TRIAL COURT'S DENIAL OF APPELLANT'S PRESENTENCE MOTION TO WITHDRAW HER PLEAS WAS AN ABUSE OF DISCRETION.

III.    THE TRIAL COURT'S SPECIAL CONDITIONS OF
COMMUNITY CONTROL REQUIRING APPELLANT TO UNDERGO
ASSESSMENTS AND COMPLETE TREATMENT FOR CHEMICAL
DEPENDENCY AND/OR SUBSTANCE ABUSE AND MENTAL
HEALTH COUNSELING ARE AN ABUSE OF DISCRETION, AS
THERE IS NO EVIDENCE THAT MENTAL HEALTH, CHEMICAL
DEPENDENCY, OR SUBSTANCE ABUSE PLAYED ANY PART IN
APPELLANT'S OFFENSES OF CONVICTION.

## II.  Law and Analysis

{¶ 20} Callahan argues that the trial court erred when it accepted her guilty pleas and abused its discretion when it denied her motion to withdraw her pleas. She also challenges the conditions of community control. We consider each assignment in turn.

## A.  Acceptance of Plea

{¶ 21} In her first assignment of error, Callahan argues that the trial court erred when it accepted her plea of guilty in the face of her protestations of innocence. She maintains that her desire to plead guilty was motivated by her fatigue from chemotherapy and her desire to be done with the case, "not by any fears of a greater sentence or what would happen had she proceeded to trial." On the one hand, she insists that while this was not formally an *Alford* plea, her plea of guilty while maintaining her innocence required the court to treat it like one and ensure that she had made a rational calculation that it was in her best interest to plead guilty. On the other hand, she emphasizes that her plea was not an *Alford* plea, thus the conflict between her plea of guilty despite protestations of innocence needed to be resolved before the court could accept the plea.

{¶ 22} Callahan further argues that it is unclear whether she even understood the plea colloquy at all. She claims that the court had difficulty getting her to understand

10.

what was happening, then simply passed the ball to defense counsel to explain it to her. She contends that counsel's off-the-record discussion with Callahan was not a suitable substitute for a meaningful plea colloquy, and the transcript of the plea hearing does not demonstrate that her plea was entered knowingly, intelligently, and voluntarily.

{¶ 23} The State responds that although Callahan disagreed with some of the facts outlined by the State, she reaffirmed the facts that supported the trial court's acceptance of her guilty plea and confirmed that she was admitting to passing two bad checks. The State insists that this appeal does not present a situation where the State's recitation of the facts actively negates an element of the offense. It emphasizes that the trial court scrupulously complied with Crim.R. 11 at the plea hearing. And it maintains that even if Callahan doesn't believe that her conduct was criminal, this does not mean that it wasn't. It argues that Callahan's insistence that "it should not have come to this" is not the same as claiming "I did not do this," and, in fact, her comments to the court reinforce that she does not dispute the facts of this case—just the results: "Like I understand what they're saying. I did write the check, I never denied that."

{¶ 24} Under both the United States and Ohio Constitutions, in order to be valid, a guilty plea must be made knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, (1969); *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Under Crim.R. 11(C)(2), "[i]n felony cases the court may refuse to accept a plea of guilty . . ., and shall not accept a plea of guilty . . . without first addressing the defendant personally . . . and doing all of the following:"

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved. . . .

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty . . ., and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against . . . her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against . . . herself.

{¶ 25} Here, the trial court pointedly advised Callahan of each of the constitutional rights she was waiving by entering her plea. As to each of these rights, Callahan confirmed that she understood. The court emphasized that it was important that she understand her rights and asked Callahan if she needed the court to repeat anything. Callahan did express that there were things she did not understand, but this was not particular to any of the constitutional rights that were being explained to her. The court gave Callahan additional time to ask questions of her attorney, and when they resumed the hearing, Callahan confirmed that her questions had been answered.

{¶ 26} As to the nature and effect of her plea and the maximum penalties involved, Callahan confirmed her understanding of this information. Although there were aspects of the State's explanation of circumstances that Callahan disagreed with— she believed that "it should not have come to this"—when the court narrowed its inquiry

12.

to the facts supporting the two counts of passing bad checks, Callahan unambiguously confirmed her intent to enter pleas to those offenses as stated in the indictments.

{¶ 27} Where the totality of the circumstances demonstrates that a defendant's guilty plea was entered knowingly, intelligently, and voluntarily, Ohio courts have found no error in the trial court's acceptance of the plea despite the fact that the defendant expressed disagreement with the prosecution's proffer. *See e.g., State v. Simmons,* 1998 WL 455540, *4 (10th Dist. Aug. 4, 1998) ("[T]he fact that appellant may have disagreed with the prosecution's proffer and used the word 'accident' during allocution does not mean that he did not understand the charge to which he was pleading."). Moreover, a comment by a defendant that he does not agree with the facts recited by the prosecutor is not sufficient to transform the plea into an *Alford* plea. *State v. May*, 2021-Ohio-261, ¶ 16 (3d Dist.). *See also State v. McClelland*, 2021-Ohio-3018, ¶ 19 (7th Dist. ), quoting *State v. Holloway,* 2018-Ohio-5393, ¶ 21 (7th Dist.) ("[T]o trigger *Alford,* the defendant 'must actually state his innocence on the record when entering a guilty plea'").

{¶ 28} Here, Callahan did state that she "never stole the vehicle," but she did not plead guilty to that particular offense, so it is of no matter. She also stated, generally, that she disagreed with the facts recited by the State, but she clarified that she "disagree[d] with the whole thing from the beginning" because "[she thought] it should not have come to this." She did not state that she was innocent of the charges. In fact, when asked pointedly by the court if she was pleading guilty and agreed that she had written bad

checks knowing they would be dishonored and with the purpose to defraud two individuals, she replied yes.

{¶ 29} We conclude that the trial court made all the necessary advisements before accepting Callahan's guilty plea, and although Callahan required additional time with her attorney to go over some of the information, her responses to the trial court's questions indicate her understanding of the nature of the charges, the maximum penalty involved, the effect of her plea, and the constitutional rights she was waiving by entering her plea. We find that her plea was entered knowingly, intelligently, and voluntarily, and the trial court did not err in accepting her plea.

{¶ 30} We find Callahan's first assignment of error not well-taken.

## B. Refusal to Allow Withdrawal of Plea

{¶ 31} In her second assignment of error, Callahan argues that the factors courts consider in determining whether to allow a defendant to withdraw a plea weigh overwhelmingly in her favor. She insists that the trial court did not adequately justify denying her motion and did not properly apply the applicable law. The State responds that Callahan experienced a mere change of heart, insufficient to justify permitting her to withdraw her plea.

{¶ 32} Crim.R. 32.1 governs the withdrawal of a plea of guilty or no contest and provides that such motion "may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The Ohio Supreme Court has

14.

recognized that "a defendant's presentence motion to withdraw his guilty plea should be *freely and liberally granted.*" (Emphasis in original.) *State v. Barnes*, 2022-Ohio-4486, ¶ 21, citing *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). It has emphasized that "when a defendant pleads guilty to one or more crimes and later wants to withdraw that plea before he has been sentenced, the trial court should permit him to withdraw his plea." *Id.* "This," the Court explained, "is the presumption from which all other considerations must start." *Id.*

{¶ 33} Despite the presumption in favor of permitting a defendant to withdraw a presentence motion to withdraw a plea, a defendant does not have an absolute right to do so. *Id.* at ¶ 13, citing *Xie* at *id.* While Crim.R. 32.1 does not specify the circumstances under which a presentence motion to withdraw may be granted—and although never adopted (and even questioned) by the Ohio Supreme Court—Ohio courts often evaluate nine factors when considering such a motion:

> (1) whether the state will be prejudiced by withdrawal; (2) the representation afforded to the defendant by counsel; (3) the extent of the Crim.R. 11 plea hearing; (4) the extent of the hearing on the motion to withdraw; (5) whether the trial court gave full and fair consideration to the motion; (6) whether the timing of the motion was reasonable; (7) the reasons for the motion; (8) whether the defendant understood the nature of the charges and potential sentences; and (9) whether the accused was perhaps not guilty or had a complete defense to the charge.

*State v. Murphy*, 2008-Ohio-2382, ¶ 39 (6th Dist.), citing *State v. Griffin*, 141 Ohio App.3d 551, 554 (7th Dist. 2001). A mere change of heart is not a sufficient reason to permit withdrawal of a plea. (Citations omitted.) *State v. Acosta,* 2016-Ohio-5698, ¶ 18 (6th Dist.).

15.

**{¶ 34}** "Before ruling on a defendant's presentence motion to withdraw his plea, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for withdrawing the plea." *Barnes* at ¶ 13, citing *Xie* at 527. The determination whether there exists a reasonable and legitimate basis for the defendant's request to withdraw his plea is "'within the sound discretion of the trial court.'" *Id.,* quoting *id.* We will reverse the trial court's decision only where there has been an abuse of that discretion. *Id.,* citing *Xie* at 526.

**{¶ 35}** With these principles in mind, we review each of the factors that appellate courts routinely consider in ruling on a motion to withdraw a plea.

**{¶ 36}** *Whether the state will be prejudiced by withdrawal.* The trial court found that the state would not be prejudiced if the motion to withdraw was granted, and concluded that this factor weighed in favor of allowing Callahan to withdraw her plea. We agree with the trial court.

**{¶ 37}** *The representation afforded to the defendant by counsel.* The trial court found that Callahan was represented by highly competent counsel who practices in common pleas courts throughout Northwest Ohio and is a good standing member of the bar. It concluded that this factor weighed against allowing Callahan to withdraw her plea.

**{¶ 38}** Callahan argues that whether or not she was represented by competent counsel does not negate her protestations of innocence, and she maintains that the trial court failed to justify its finding that this factor weighed against allowing her to withdraw

her plea. We agree with the trial court that this factor weighs against allowing Callahan to withdraw her plea. Callahan was represented by counsel, she was given sufficient opportunity to discuss the plea agreement with counsel, and the trial court allowed her additional time to go off the record to consult with her attorney when she had questions during the plea hearing. Callahan's claim of innocence and the court's purported failure to address this issue are more properly discussed in the context of other factors addressed below.

{¶ 39} *The extent of the Crim.R. 11 plea hearing.* The trial court found that before accepting her plea, it reviewed with Callahan her constitutional rights and she indicated that she understood her rights. It also noted that Callahan acknowledged that she understood the charges against her and the maximum penalties for the offenses, willingly signed the plea form and trial waiver, and was permitted a recess during the plea hearing to allow Callahan to confer with counsel when she had questions. The court concluded that these factors weighed against allowing Callahan to withdraw her plea.

{¶ 40} Callahan maintains, however, that this factor weighs in her favor because there were deficiencies in the plea process and she was not afforded a meaningful colloquy with the court. We disagree. The trial court made all the required advisements under Crim.R. 11(C) and allowed Callahan time to ask additional questions of her attorney to ensure that she understood the nature of the charges, the maximum penalty involved, the effect of her plea, and the constitutional rights she was waiving by entering her plea. We find that this factor weighs against allowing Callahan to withdraw her plea.

17.

{¶ 41} *The extent of the hearing on the motion to withdraw.* The trial court found that Callahan was permitted a hearing on her motion to withdraw her plea and was not denied the right to present evidence. It concluded that this factor weighed against allowing Callahan to withdraw her plea.

{¶ 42} Callahan acknowledges that the trial court held a hearing on her motion, but stops short of characterizing it as a "full hearing." She maintains that this factor is neither favorable nor unfavorable to her motion. Nevertheless, we observe that the trial court did set the matter for a hearing and defense counsel was free to offer more than just oral argument if he saw fit. We find that this factor weighs against allowing Callahan to withdraw her plea.

{¶ 43} *Whether the trial court gave full and fair consideration of the motion.* The trial court suggested that the determination of this factor is best left to the reviewing court, but it explained that it had reviewed the motion, held a hearing, took the matter under advisement, and issued a decision.

{¶ 44} Callahan maintains that this factor weighs in her favor because the trial court did not give her motion full consideration given that it did not discuss how her claim of innocence factored into its reasoning. We find, however, that the trial court provided a written decision that contained a detailed explanation of its rationale for denying Callahan's motion. This factor weighs against allowing Callahan to withdraw her plea. Callahan's complaint that her claim of innocence was not considered will be addressed below.

18.

{¶ 45} *Whether the timing of the motion was reasonable.* The trial court acknowledged that Callahan's motion was filed within days after she entered her plea and concluded that this factor weighs in favor of allowing Callahan to withdraw her plea. We agree that this factor weighs in favor of allowing Callahan to withdraw her plea.

{¶ 46} *The reasons for the motion.* The trial court acknowledged that Callahan maintained that she is innocent of the charges and claimed that she had neglected to consider the impact the guilty plea may have on possible career opportunities. It also noted the State's response that a potential loss of employment opportunities is not a legitimate basis for allowing withdrawal of the plea and is evidence of a mere change of heart. The court found that at the plea hearing, Callahan demonstrated her eagerness to resolve the charges and never vacillated in her desire to enter a plea to resolve the case. It determined that except for the possibility of limited employment opportunities, there was no evidence that Callahan learned any new information to justify withdrawal of her plea and concluded that Callahan experienced a mere change of heart that weighed against allowing her to withdraw her plea.

{¶ 47} We agree with the trial court. We also note that at the plea hearing, Callahan expressed that she disagreed with some of the accusations against her— specifically, she stated that she "never stole the vehicle." Callahan did not claim innocence as it concerned the passing-bad-checks charges, and she entered pleas to passing bad checks—the State agreed to dismiss the charges of grand theft and grand theft of a motor vehicle. As such, we do not agree with Callahan that her current claim of

19.

innocence necessitates that she be permitted to withdraw her plea. We find that this factor weighs against allowing Callahan to withdraw her plea.

{¶ 48} *Whether the defendant understood the nature of the charges and potential sentences.* The trial court emphasized that it had reviewed the charges and maximum penalties at Callahan's arraignment; Callahan executed plea papers that set forth the State's offer to dismiss Counts 1 and 2 at sentencing upon a guilty plea to Counts 3 and 4, and the plea papers set forth the potential sentences; the court again reviewed with Callahan the possible penalties; and Callahan stated that she understood the nature of the charges and potential sentences. The court found that this factor weighed against allowing Callahan to withdraw her plea.

{¶ 49} On appeal, Callahan acknowledges that she was advised of the maximum penalties and nature of the charges, but she submits that because she maintained her innocence and the quality of the plea hearing itself is in question, this factor weighs in her favor. We disagree. As we concluded above, the court ensured that Callahan understood the nature of the charges and the potential sentences. Callahan admitted to passing bad checks when pointedly asked by the trial court if she agreed and desired to plead guilty; the claims she denied—theft of the vehicle—were dismissed. We find that this factor weighs against allowing Callahan to withdraw her plea.

{¶ 50} *Whether the accused* was *perhaps not guilty or had* a *complete defense to the charge.* The trial court said that it was unaware of whether Callahan was perhaps not guilty or had a complete defense to the charges, but it observed that there had been no

20.

allegation that discovery was not exchanged or that new evidence had materialized. It found that this factor weighed neither for nor against allowing Callahan to withdraw her plea.

{¶ 51} Callahan claims that this factor weighs in her favor because she made clear at the plea hearing that she maintained her innocence and, if true, this affords a complete defense. As we have explained, however, Callahan disputed stealing the vehicle. She did not claim innocence with respect to the passing-bad-checks charges and, in fact, acknowledged writing the checks. There is no information in the record from which we can conclude that Callahan was perhaps not guilty of the offenses to which she entered pleas. We find that this favor weighs against allowing Callahan to withdraw her plea.

{¶ 52} Considering all of these factors, we find that they weigh most strongly against allowing Callahan to withdraw her plea. Accordingly, we conclude that the trial court did not abuse its discretion when it denied her motion. We find Callahan's second assignment of error not well-taken.

### C. Conditions of Community Control

{¶ 53} In her third assignment of error, Callahan argues that the trial court erred in requiring, as conditions of community control, that Callahan be assessed and complete recommended treatment for chemical dependency, substance abuse, and mental illness. She maintains that (1) these conditions are unrelated to the interests of promoting justice, rehabilitating her, or ensuring good behavior, (2) they bear no relationship to her

21.

convictions or risk of future criminality, and (3) there was no evidence that drugs, alcohol, or mental illness played any role in her offense.

{¶ 54} The State responds that these are standard conditions of community control and were not overtly onerous. It also submits that Callahan was "wholly uncooperative" with the probation department during the presentence investigation report process, thus the court was left with no other option than ordering the assessments.

{¶ 55} R.C. 2929.15(A)(1) grants trial courts broad discretion to impose conditions of community control that it considers appropriate. *State v. Talty,* 2004-Ohio-4888, ¶ 10. The conditions must be (1) reasonably related to rehabilitating the offender, (2) have some relationship to the crime at issue, and (3) relate to conduct that is criminal or reasonably related to future criminality. *Id.,* quoting *State v. Jones,* 49 Ohio St.3d 51, 53 (1990). They cannot be so overbroad that they unnecessarily impinge upon the offender's liberty. *Id.* at ¶ 13, quoting *Jones* at 52. We review the imposition of community control conditions for an abuse of discretion. *Id.* An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

{¶ 56} Here, Callahan did not cooperate with the adult probation department in the PSI process. It was unknown whether she had a history of substance abuse, and there is some indication in the PSI that she has undergone mental health treatment in the past.

22.

Under these circumstances, it was not unreasonable for the court to order her to complete assessments for chemical dependency, substance abuse, and mental illness, and to cooperate with treatment if recommended. The trial court did not abuse its discretion in imposing these conditions of community control.

{¶ 57} We find Callahan's third assignment of error not well-taken.

### III. Conclusion

{¶ 58} The trial court did not err when it accepted Callahan's guilty plea. The trial court made all the necessary advisements before accepting Callahan's guilty plea, and although Callahan required additional time with her attorney to go over some of the information, her responses to the trial court's questions indicate her understanding of the nature of the charges, the maximum penalty involved, the effect of her plea, and the constitutional rights she was waiving by entering her plea. We find her first assignment of error not well-taken.

{¶ 59} The trial court did not abuse its discretion when it denied Callahan's motion to withdraw her guilty plea. The nine factors courts generally consider when determining whether to grant a motion to withdraw a plea weigh most strongly against allowing Callahan to do so. We find her second assignment of error not well-taken.

{¶ 60} The court did not abuse its discretion when it ordered mental health and substance abuse assessments as conditions of community control. Callahan did not cooperate with the adult probation department in the PSI process, it was unknown whether she had a history of substance abuse, and there is some indication in the record

23.

that she has undergone mental health treatment in the past.  We find her third assignment of error not well-taken.

{¶ 61} We affirm the January 12, 2024 judgment of the Wood County Court of Common Pleas.  Callahan is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.         _____
JUDGE

Christine E. Mayle, J.

                 _____

Myron C. Duhart, J.          JUDGE
CONCUR.

                 _____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.