[Cite as *State v. Oliver*, 2021-Ohio-1247.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DAVID OLIVER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 MA 0028**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 16 CR 1399

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Judges and Michael D. Hess,
Judge of the Fourth District Court of Appeals, Sitting by Assignment.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains,* Mahoning County Prosecutor*, Atty. Ralph M. Rivera,* Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Joseph W. Gardner*, 19 E. Front Street, Youngstown, Ohio 44503 for Defendant-Appellant.

Dated:  March 31, 2021

**Robb, J.**

{¶1}    Defendant-Appellant David Oliver appeals the judgment of the Mahoning County Common Pleas Court, which was entered after he pled guilty and was sentenced for murder with a firearm specification and having a weapon while under disability.  He contends the record does not show his plea was made knowingly, intelligently, and voluntarily because the transcript merely says he nodded his head without verbally answering when the court asked if he understood a guilty plea is a complete admission to the charges.  For the following reasons, this argument is overruled, and the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2}    On September 20, 2016, Andre Harrison was shot and killed in his Youngstown residence.  According to the prosecution, the police responded to a call of a shot fired at 5:29 p.m. and found the victim dead with a single gunshot wound to the chest.  Neighbors reported seeing two young black males running from the scene.  (Sent.Tr. 5).  The house was "trashed" and it was apparent the intruders took interior video surveillance cameras and a corresponding digital video recorder (DVR) from inside the residence; an outdoor camera near the driveway was not taken.  Later that day, the victim's house was "burnt down" by arson.  (Sent.Tr. 6).

{¶3}    According to a defense filing in the case, the stolen DVR was recovered by the Youngstown Police Department on September 28, 2016 and sent to the state's Bureau of Criminal Investigation (BCI) for data recovery.  BCI recovered video from the DVR and transferred it to a DVD, which the police department received on December 1, 2016.   The police released scenes from the video to the news stations to generate community assistance with identification.  (5/31/17 Def. Mot.).

{¶4}    The police were then able to identify Appellant as the shooter and Jalon Allen as the accomplice.  Jalon Allen gave a statement to police saying he did not shoot

the victim or commit the arson. From the video, it appeared the "motive was to rob the victim and steal items from inside the house." (Sent.Tr. 6).

{¶5} On December 15, 2016, Appellant was indicted on seven counts: (1) aggravated murder with prior calculation and design; (2) aggravated murder during an aggravated robbery; (3) aggravated murder during an aggravated burglary; (4) aggravated robbery; (5) aggravated burglary; (6) tampering with evidence; and (7) having a weapon while under disability (as a result of two 2014 burglary convictions). Firearm specifications accompanied all counts except the sixth. Jalon Allen was jointly indicted on all counts except the seventh.

{¶6} On August 16, 2019, Appellant entered a plea agreement wherein he pled guilty to an amended charge of murder, the charge of having a weapon while under disability, and a firearm specification. The state agreed to dismiss the other charges. The jointly agreed upon sentencing recommendation was 15 years to life for murder, plus three years for the firearm specification, followed by a consecutive sentence of three years for having a weapon while under disability, for a total of 21 years to life. A presentence investigation was waived, but the state asked to hold sentencing until after the co-defendant's trial, which was to begin the next week. (Plea Tr. 3).

{¶7} Sentencing proceeded on August 22, 2019. The defense noted that Appellant's acceptance of responsibility helped the state settle the co-defendant's case. The trial court imposed the agreed-upon sentence at the hearing and in the August 23, 2019 sentencing entry. The within appeal followed.

ASSIGNMENT OF ERROR

{¶8} Appellant's sole assignment of error alleges:

"Nodding one's head is not a sufficient response to knowingly, intelligently and voluntarily make a complete admission of one's guilt in this murder case and other serious felonies in this case."

{¶9} A defendant's decision to enter a plea must be knowing, intelligent, and voluntary. *State v. Dangler*, __ Ohio St.3d __, 2020-Ohio-2765, __ N.E.3d __, ¶ 10. By providing the procedure a trial court is to use when accepting a guilty plea, Crim.R. 11 allows a reviewing court to ensure the plea has these qualities. *Id.* at ¶ 10-11.

{¶10} Crim.R. 11 initially states: "(B) Effect of Guilty or No Contest Pleas. With reference to the offense or offenses to which the plea is entered: (1) The plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1). Another effect of the guilty plea is listed under (B)(3), which says when the plea is accepted, the court shall proceed with sentencing under Crim. R. 32. Crim.R. 11(B)(3). *See also* Crim.R. 32(A) ("Sentence shall be imposed without unnecessary delay," but bail or commitment can be utilized pending sentencing).

{¶11} Crim.R. 11 then provides, the court shall not accept a guilty plea in a felony case "without first addressing the defendant personally * * * (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence." Crim.R. 11(C)(2)(b).

{¶12} Subdivision (C)(2)(b) involves non-constitutional rights, as opposed to the constitutional rights listed in subdivision (C)(2)(c). A failure with regards to a constitutional right does not require a showing of prejudice in order to invalidate the plea. *Dangler*, __ Ohio St.3d __, 2020-Ohio-2765 at ¶ 14. However, a failure with regards to a non-constitutional right requires a showing of prejudice, unless the trial court completely failed to comply with the advisement. *Id.* at ¶ 14-16.

{¶13} To show prejudice, the defendant must demonstrate the plea would not have been made but for the court's failure. *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Prejudice must be demonstrated on the face of the record. *Dangler*, __ Ohio St.3d __, 2020-Ohio-2765 at ¶ 24.

{¶14} There is no dispute that the trial court addressed the defendant personally and informed him of every item listed in Crim.R. 11(C)(2)(a)-(c), including that the guilty plea is a complete admission of the charges. Appellant *verbally responded* to indicate that he understood the court's advisement after every item *except one.*

{¶15} Specifically, Appellant's response to the court's inquiry on his understanding of the first part of Crim.R. 11(C)(2)(b) was recorded by the court reporter as a nodded response unaccompanied by words. Pertinent to subdivision (C)(2)(b), the transcript reads:

THE COURT:  Do you understand that if you make a plea of guilty here today you're making a complete admission to these charges?

THE DEFENDANT:  (Nods head.)

THE COURT:  And although we indicated that there's going to be a separate sentencing date we can proceed immediately to sentencing today; do you understand that?

THE DEFENDANT:  Yes.

(Plea Tr. 7).

**{¶16}** Appellant notes the trial court could have instructed him to answer out loud, and he cites cases to illustrate how trial courts have instructed nodding defendants to verbalize answers.  Appellant also provides instances of court reporters describing the nodding they observed, such as "nodding in the affirmative" or "nodded his head yes." He points to the facts of these cases as examples; none of the cited cases contained arguments on whether a court reporter's description was sufficient to show the nod indicated an affirmative answer.[1]

**{¶17}** In researching the matter, we notice the Sixth District had a case where the appellant argued his plea was not made knowingly, intelligently, and voluntarily as he nodded instead of orally answering the court's questions on a constitutional right and on the maximum penalty.  The appellate court stated, "there is no requirement that the appellant orally indicate to the court his understanding and agreement with the court's statements." *State v. Bannister*, 6th Dist. Lucas No. L-88-052 (Feb. 24, 1989).  Still, in that case, the court reporter may have descriptively labeled the nod as the court found: "An affirmative nod, noted by the court reporter in the transcript of proceedings, is sufficient to establish that the appellant understood and agreed with the court's statements." *Id.*

---

[1] In one case, the court reporter said the defendant "nodded in the affirmative" in response to two questions, but the defendant argued the video showed he did not nod.  In rejecting the argument in the context of counsel's no-merit brief, the appellate court viewed the video and found he subtly nodded.  *State v. Mobley*, 2d Dist. Montgomery No. 22224, 2008-Ohio-2244, ¶ 6-7.

{¶18} Appellant argues the record does not show his head nod was performed in an affirmative manner because the court did not insist he speak his answer or announce for the record that the defendant was nodding his head affirmatively and because the court reporter did not describe her observation "Nods head" by adding "affirmatively" or a similar descriptor.

{¶19} Initially, we note the word "nod" when used in the context of replying to a question typically refers to the act of moving one's head to show one is replying *in the affirmative*. For instance, mcmillandictionary.com provides a common definition of the verb nod: "to move your head first downward and then upward, to answer 'Yes' to a question or to show that you agree, approve, or understand." In Google's web browser, the dictionary search bar (furnished by Oxford Languages) provides a similar definition of nod: "lower and raise one's head slightly and briefly, especially in greeting, assent, or understanding, or to give someone a signal." It is not common to use the term "Nods head" to mean the opposite of an affirmation or to indicate an expression of confusion or uncertainty.

{¶20} We also note that immediately after Appellant nodded, the court continued with the second half of the sentence contained in Crim.R. 11(C)(2)(b): "And * * * we can proceed immediately to sentencing today; do you understand that?" (Plea Tr. 7). Appellant said, "Yes." Both the guilty plea as a complete admission and the court's ability to proceed to sentencing are defined as part of the "effect of the guilty plea." Crim.R. 11(B)(1),(3). It is possible the trial court was combining its recitation of both parts of the sentence within the subdivision, and Appellant was answering verbally when the entire question was complete.

{¶21} Notably, a plea is not invalid merely because the court does not stop and inquire after the explanation of each right. *State v. Ballard*, 66 Ohio St.2d 473, 479, 423 N.E.2d 115 (1981). This was true even in a case involving the advisement on constitutional rights, whereas here we are discussing a non-constitutional (and non-complex) right. *See id.* (although it is "best" to stop and inquire after each constitutional right, "the failure to so proceed will not necessarily invalidate a plea").

{¶22} Our review of the totality of the circumstances supports the state's position that Appellant understood the effect of his guilty plea after he nodded his head when the

court asked if he understood that a guilty plea is a complete admission to the amended charges and that Appellant was not prejudiced in any event. The case had been pending against Appellant for over 2.5 years. He had multiple attorneys prior to the one representing him for the final year and the plea. There were multiple plea negotiating sessions. Counsel disclosed that he spoke to Appellant for two hours the day before the plea and an hour the day before that about the case and the plea. (Plea Tr. 3).

{¶23} At the beginning of the plea hearing, the court asked if it was Appellant's intent to withdraw his former plea of not guilty to the charges in the indictment and enter a plea of guilty to the amended charges, and Appellant said, "Yes." (Plea Tr. 4). There is no contention with regard to the court's colloquy on any Crim.R. 11 right except the alleged failure to ensure the record adequately reflected an affirmative reply after the court asked if he understood that if he pled guilty he would be making a complete admission to the charges.

{¶24} The effect of the guilty plea as a complete admission to the charges in the plea agreement is an easy to comprehend concept. In fact, it is such a basic premise that the Supreme Court once observed that "a defendant is presumed to understand that he has completely admitted his guilt" where he enters a guilty plea "without asserting actual innocence" (i.e., where it is not an *Alford* plea). *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 19 (after finding the record, including the written plea and recitations by the state, indicated the defendant understood he was admitting to the crimes by pleading guilty). "In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *Id.* Here, there was not a failure to inform Appellant of the effect of the guilty plea. Rather, the argument is merely that the court did not sufficiently ensure the record reflected that he voiced his understanding of the information the court stated on the effect of the plea.

{¶25} Additionally, the written plea specifically said: "I further understand that my plea of guilty is a complete admission of my guilt as to the charge(s) and/or specification(s) contained herein." (Original all caps.) The court ensured Appellant could read and asked if Appellant read the written plea agreement with his attorney, and

Appellant said that he did. (Plea Tr. 8). He also said he signed the written agreement voluntarily. (Plea Tr. 16).

**{¶26}** Although a written plea is not a substitute for the court's colloquy, it can be relevant to the trial court's determination of the defendant's understanding. *See, e.g., State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 25 (even on a constitutional right, "an alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question"). *See also Griggs*, 103 Ohio St.3d 85 at ¶ 16 (finding the record indicated the defendant understood the effect of the plea, notwithstanding the court's failure to advise him that a guilty plea is a complete admission, where the defendant acknowledged voluntarily signing and understanding a plea form wherein he said he committed the offenses).

**{¶27}** In addition, the trial court said: "I've advised you of your statutory and constitutional rights and you indicated that you understood them and are hereby waiving them. Do you understand each and every one of these rights?" Appellant responded, "Yes." He then indicated that he had no questions regarding his rights. (Plea Tr. 15).

**{¶28}** At the close of the plea hearing, the court declared, "The court has fully advised the defendant of the effect of his plea pursuant to Crim.R. 11 and finds that the plea has been freely and voluntarily made with full knowledge of its consequences." The court said Appellant understood all of the rights explained to him and specifically concluded: "he understood the effect of his plea and that the court, upon acceptance, may proceed to judgment and sentence." (Plea Tr. 17). This further suggests the court interpreted Appellant's one instance of nodding his response as nodding in the affirmative.

**{¶29}** Finally, we note the trial court said it watched a surveillance video of the events inside the victim's house, and saw Appellant approach the victim and shoot him, which made it appear he intended to go there to kill and rob the victim. (Sent.Tr. 10-11). Appellant received a substantial benefit by his plea agreement with dismissal of the three forms of aggravated murder, dismissal of the aggravated robbery and aggravated burglary offenses, and dismissal of the tampering with evidence offense (which was a third-degree felony).

{¶30} Appellant's brief states he did not clearly admit to criminal conduct at sentencing. This is apparently a recognition that courts have reviewed the sentencing transcript when considering whether the record demonstrates the defendant was prejudiced due to a plea issue. At the sentencing hearing less than a week after the plea, defense counsel said: Appellant had "always accepted responsibility"; he wanted to plead guilty throughout the year counsel represented him; he was insistent that he did not go to the victim's house with the prior intent to kill him; and the issue was always with the number of years being offered by the state. (Sent.Tr. 7-8). (He was originally charged with prior calculation and design aggravated murder.) Appellant confirmed counsel's disclosure, stating "it was never intended to go that way." He also said he was remorseful and hoped the victim's family could find comfort in the sentence knowing justice was served. (Sent.Tr. 9).

{¶31} In summary, we conclude the trial court complied with Crim.R. 11(C)(2)(b) by informing Appellant that a guilty plea was a complete admission to the charges and by determining that he understood this was the effect of his plea. Regardless, Appellant has failed to show prejudice. There is no indication Appellant would have refused to continue with the plea deal and would have risked trial on the original charges if the trial court had stopped after Appellant's head nod and repeated that a plea of guilty was a complete admission in order to evoke a verbal understanding of this basic statement.

{¶32} For the foregoing reasons, the trial court's judgment is affirmed.


Waite, J., concurs.

Hess, J., concurs.


Case No. 20 MA 0028

[Cite as *State v. Oliver*, 2021-Ohio-1247.]

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**