[Cite as *State v. Qiu*, 2025-Ohio-5485.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

YOUKAI QIU,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 NO 0526**

---

Criminal Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 224-2099

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jordon Croucher*, Noble County Prosecutor for Plaintiff-Appellee and

*Atty. Edward A. Czopur* for Defendant-Appellant.


Dated:  December 9, 2025

**Robb, P.J.**

{¶1}    Defendant-Appellant Youkai Qiu appeals from his conviction of two offenses after his guilty plea in the Noble County Common Pleas Court.  He argues the plea was not entered knowingly, intelligently, and voluntarily because the court failed to advise him of the effect of the guilty plea; namely, he contends the court did not specify a guilty plea is a complete admission of guilt and the court could proceed to judgment and sentence.  Claiming the court completely failed to comply with these non-constitutional portions of Crim.R. 11(C), Appellant concludes he need not show prejudice in order to seek vacation of the plea.  For the following reasons, Appellant's convictions are upheld, and the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2}    On October 9, 2024, Appellant was indicted on five counts:  (1) theft (of $24,000) from a person in a protected class, a third-degree felony; (2) telecommunications fraud, a third-degree felony; (3) attempted theft (of $40,000) from a person in a protected class, a third-degree felony; (4) breaking and entering, a fifth-degree felony; and (5) possessing criminal tools (intended for use in a felony), a fifth-degree felony.

{¶3}    The person in a protected class was the 86-year-old victim, who initially lost $24,000 in a scam.  After the victim was subsequently asked to provide $40,000, Appellant appeared at the victim's house and retrieved a bag said to contain this amount of cash.  However, as the victim consulted law enforcement between the two payments, the $40,000 in this bag was fake money (and the final theft offense was accordingly charged as an attempt).  Both theft counts carried forfeiture specifications, which sought the seized vehicle and the real money ($38,818) found in it.[1]

{¶4}    An interpreter certified by the Ohio Supreme Court was provided for all proceedings.  At a bail hearing, a co-defendant was discussed, and it was noted Appellant traveled from New York to the victim's Noble County residence.  Defense counsel said

---

[1] The seized amount of $38,818 cash in the forfeiture specification was believed to be the victim's initial $24,000 loss combined with other criminal proceeds (such as from an unknown victim); it was separate from the fake money supplied to the victim by law enforcement.

Appellant's native country was China, he was not a United States citizen, he had been in this country for ten months, and he did not have work privileges. The parties discussed the fact that Appellant was subject to a federal immigration detainer. (10/28/24 Tr. 11-12). The court maintained the bail of $250,000 with 10% allowed. (10/15/24 J.E.); (10/29/24 J.E.). After defense continuances of the trial date, the parties attended a pretrial and jointly requested a further pretrial. (3/25/25 J.E.).

{¶5} On April 22, 2025, a plea agreement was reached. Appellant agreed to plead guilty to two counts: count three, attempted theft from a person in a protected class (a third-degree felony) with the related forfeiture specifications, and count five, possessing criminal tools (a fifth-degree felony). The state agreed to dismiss the remaining charges. The parties also agreed to proceed to a pre-sentence investigation (PSI) and to thereafter present arguments on sentencing. (Plea Tr. 3-4).

{¶6} At the plea hearing, defense counsel said he advised Appellant of his constitutional rights, the elements, and any defenses. Counsel indicated he engaged in multiple conversations with Appellant about the anticipated evidence and witness testimony. *Id.* at 4. Appellant agreed he was informed of his rights, the elements, and defenses. *Id.* at 13. The court reviewed the relevant felonies with their degrees, specified the seized items constituting the forfeiture specifications, and explained the available penalties (including the maximum sentence of 36 months for the third-degree felony, 12 months for the fifth-degree felony, and post-release control). *Id.* at 6, 8-11.

{¶7} As Appellant said he was not a United States citizen, the trial court explained a conviction of the offenses to which he was pleading guilty might have consequences such as deportation, exclusion of admission to the country, and denial of naturalization. *Id.* at 13, 18. After Appellant said he understood, defense counsel noted Appellant's immigration hearing already occurred and resulted in a deportation order; it was acknowledged he would be deported to his native country of China after completing his incarceration in this case. *Id.* at 18-19.

{¶8} Appellant said he was 25 years old and could read and write in his native language.[2] When asked about his educational background, he replied, "Middle School."

---

[2] At an earlier hearing, Appellant said he wished to read four "classical Chinese" books sent to the jail for him, while noting he could not do so because jail policies banned hardback books. (11/19/24 Tr. 4-5).

Case No. 25 NO 0526

*Id.* at 13. When asked if he has been able to understand all of the proceedings with an interpreter, Appellant answered, "Yes, I understood." *Id.* at 14. He said he was satisfied with the services of his attorney and was entering the plea voluntarily with no threats or coercion. *Id.* at 14-15. He also said he understood the agreement was just a recommendation, which the court was not bound to follow. *Id.* at 15-16.

**{¶9}** The court addressed the various constitutional rights Appellant was waiving by entering the plea and ensured he understood those rights. *Id.* at 16-17. Appellant denied participation in the first theft (which was dismissed under the plea agreement) and agreed to the requested forfeitures (while disclaiming any interest in the funds seized from his vehicle). *Id.* at 6-8; *see also* (Sent. Tr. 14, 24).

**{¶10}** Appellant said he was withdrawing his former not guilty plea to the two offenses recited by the court, and he thereafter pled guilty. *Id.* at 5-6. 9, 17, 19. Nonetheless, before accepting the plea, the trial court continued by asking for a statement of facts. The prosecutor briefly recited: on September 20, 2024 in Noble County, Appellant with purpose to deprive the victim of $40,000 did knowingly attempt to obtain or exert control over the property; the victim was over the age required to be classified as an elderly person; and Appellant had under his control a cell phone with purpose to use it criminally in commission of a felony. *Id.* at 20-21. Appellant was again asked if he understood all the proceedings, and he answered in the affirmative. *Id.* at 21.

**{¶11}** Still, the judge provided additional explanations by saying she was about to accept the pleas and make findings of guilt, after which it would be very difficult to withdraw those pleas and proceed to trial. *Id.* at 21-22. Further ensuring Appellant wished the court to proceed, the judge advised him this was the last chance before she proceeded to accept the pleas. Finally, the court announced a showing had been made that Appellant was in fact guilty, and the court declared the pleas were knowing and voluntary without any promises or duress. *Id.* at 22. After accepting the plea, the court ordered a PSI and set the case for sentencing.

**{¶12}** At the May 8, 2025 sentencing hearing, the state asked for consecutive sentences. Defense counsel argued against consecutive sentences and requested a sentence of 1 year, noting Appellant was already subject to a deportation order. The court imposed concurrent sentences of 30 months for attempted theft and 10 months for

possessing criminal tools. The court ordered the forfeiture of all seized items, as agreed by the parties. Appellant filed a timely notice of appeal.

ASSIGNMENT OF ERROR

**{¶13}** Appellant's assignment of error provides:

"The trial court completely failed to explain Appellant's rights pursuant to Crim.R. 11(C)(2)(b), which requires this Court to hold that his guilty plea was not knowingly, intelligently, and voluntarily made without a showing of prejudice."

**{¶14}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Veney*, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11 was adopted to instruct trial courts on the procedure to utilize in accepting pleas. *Id.*

**{¶15}** By rule, the court in a felony case "shall not accept a plea of guilty or no contest without first addressing the defendant personally" while:

> (b) Informing the defendant of and determining that the defendant
> understands the effect of the plea of guilty or no contest, and that the court,
> upon acceptance of the plea, may proceed with judgment and sentence.

Crim. R. 11(C)(2) (other subparts address the nature of the charges, maximum sentence, ineligibility for probation, and waiver of constitutional rights).

**{¶16}** The prior division contains an internal title, "Effect of Guilty or No Contest Pleas." The first subdivision under this heading states, "The plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1). After addressing a no contest plea in the second subdivision, the third subdivision says the court "shall proceed with sentencing under Crim.R. 32" when the plea is accepted. Crim.R. 11(B)(3); *see also* Crim. R. 32(A) (instructing the court to impose sentence without "unnecessary delay" while expressly allowing for incarceration or bail pending sentencing). "Both the guilty plea as a complete admission and the court's ability to proceed to sentencing are defined as *part of* the 'effect of the guilty plea.'" (Emphasis added). *State v. Oliver*, 2021-Ohio-1247, ¶ 20 (7th Dist.).

**{¶17}** Relying on Crim.R. 11(B), Appellant contends the trial court did not inform him of the effect of the guilty plea as required by Crim.R. 11(C)(2)(b). He argues the court failed to specifically say the guilty plea was "a complete admission of guilt" and "the court

may proceed with judgment and sentence" upon accepting the plea. In doing so, he acknowledges his argument involves non-constitutional rights (rather than constitutional rights) waived by the plea. He hinges his argument on the law used to ascertain whether prejudice must be demonstrated in order to successfully appeal a plea.

**{¶18}** Traditionally, while the advisement on constitutional requirements must strictly comply with the rule and no showing of prejudice is required, a defendant raising an issue with *non*-constitutional rights must show a lack of substantial compliance and prejudice. *Veney* at ¶ 15-18, 30. In *Veney*, the Court explained substantial compliance exists if under the totality of the circumstances the defendant subjectively understood the implications of the plea and the rights being waived, including the consequences of the waiver. *Id.* at ¶ 15-16.

**{¶19}** Appellant recognizes the "traditional rule" places a burden on the defendant to show prejudice in order to seek vacation of a plea based on a faulty advisement of a non-constitutional aspect of Crim.R. 11. *State v. Dangler*, 2020-Ohio-2765, ¶ 13-17, citing *Veney* at ¶ 17. In accordance, a felony guilty plea entered after "partial compliance" with a non-constitutional rights advisement is to be upheld if the defendant fails to show prejudice. *Id.* at ¶ 17, citing *State v. Clark*, 2008-Ohio-3748, ¶ 32.

**{¶20}** In evaluating prejudice, the Supreme Court considers "whether the plea would have otherwise been made." *Id.* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). A guilty plea is not reversible in a direct appeal after a partially compliant non-constitutional advisement unless the "face of the record" shows the defendant would not have entered the plea but for the issue raised. *Id.* at ¶ 23-24 (upholding the plea where there was "nothing in the record indicating [the defendant] would not have entered his plea had he been more thoroughly informed of the details").

**{¶21}** Appellant does not allege a showing of prejudice could be made in this case. Instead, he points to the exception to the general rule applicable when there was a complete lack of compliance, as explained by the Supreme Court in *Dangler*. That is, the "*complete* failure" to advise a pleading felony defendant about a non-constitutional right is reversible on direct appeal without a showing of prejudice. (Emphasis in original.) *Dangler* at ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22 (finding a complete failure where the court did not orally mention post-release control at all).

**{¶22}** In attempting to simplify the analysis, the *Dangler* Court instructed reviewing courts to answer the following questions:

(1) has the trial court complied with the relevant provision of the rule?

(2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and

(3) if a showing of prejudice is required, has the defendant met that burden?

(Spacing added.) *Id.* at ¶ 17 (where the Court noted its prior case law "muddled the analysis"). Upon so holding, the *Dangler* Court concluded the trial court's general advisement that the plea would subject the defendant to registration requirements did not "completely fail" to comply with its duty to explain the maximum potential penalty for a sex offender even though the trial court failed to explain in-person verification requirements, community notice, and residence restrictions. *Id.* at ¶ 22-23.

**{¶23}** The state argues the trial court substantially complied with Crim.R. 11(C)(2)(b)'s requirements to inform Appellant and determine he understood that the effect of his plea was a complete admission of guilt and that the court could proceed to judgment and sentence (and thus, even if prejudice existed, the plea would not be subject to vacation). The state reviews the various specific statements by the participants and the totality of the colloquy and circumstances. The state emphasizes the evidence on Appellant's ability to understand the proceedings, including the Ohio Supreme Court certified interpreter provided throughout, Appellant's answers to court questions, and his own questions posed to the court. In any event, the state asserts the trial court, at the very least, partially complied with Crim.R. 11(C)(2)(b)'s requirements (and thus, Appellant's burden of showing of prejudice on the record cannot be avoided).

**{¶24}** On the first item in Crim.R.11(B)(1), regarding a guilty plea as a complete admission of guilt, the state points to the following comments by this court:

The effect of the guilty plea as a complete admission to the charges in the plea agreement is an easy to comprehend concept. In fact, it is such a basic premise that the Supreme Court once observed that "a defendant is presumed to understand that he has completely admitted his guilt" where

he enters a guilty plea "without asserting actual innocence" (i.e., where it is not an *Alford* plea).

*Oliver*, 2021-Ohio-1247, at ¶ 24 (7th Dist.), citing *State v. Grig*gs, 2004-Ohio-4415, ¶ 19. While stating "a defendant is presumed to understand that he has completely admitted his guilt," the Supreme Court in *Griggs* found the record, including recitations by the state, indicated the defendant understood he was admitting to the crimes by pleading guilty and then concluded the trial court's "failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *Grig*gs at ¶ 19.

**{¶25}** The state points out our *Oliver* case cited *Griggs* even after *Dangler* where we maintained the term "guilty plea" was an easy to understand concept equating to a "complete admission of guilt." We note, however, *Oliver* involved a trial court informing the defendant of the effect of the plea as a complete admission without requiring an audible response to go along with nodding that was memorialized in the transcript. *Oliver* at ¶ 15.

**{¶26}** Recognizing this, the state directs us to an Eighth District case expressly concluding: "Although *Griggs* was decided prior to the Court's decision in *Dangler*, it remains good law on the issue of a defendant's subjective understanding of the effect of a guilty plea." *State v. Fontanez*, 2024-Ohio-4579, ¶ 15 (8th Dist.) (en banc). "*Dangler* did not explicitly overrule *Griggs*, and inferior courts are generally bound by the precedent of superior courts unless or until they overrule the prior decision." *Id.* In accordance, the *Fontanez* court found continued applicability of the *Griggs* conclusion that "a guilty plea is obviously an admission of guilt . . ." *Id.; see also State v. Smith*, 2025-Ohio-4377, ¶ 26 (8th Dist.) (maintaining the precedent that common sense dictates the defendant understood a guilty plea was an admission of guilt and also concluding the trial court did not completely fail to communicate the effect of the guilty pleas where the court asked if he committed the described acts and he responded by saying he was guilty).

**{¶27}** Regardless, in the case at bar, as additionally observed in *Fontanez*, "[t]he plain and ordinary meaning of the word 'guilty' is also apparent from the plea colloquy itself." *Id.* at ¶ 14; *see also Smith* at ¶ 26. Appellant clearly knew he was at a plea hearing where he was no longer maintaining his not guilty pleas and was proceeding to terminate his criminal case by entering pleas of guilty to two offenses in order to avoid a trial on all

five offenses.  After the plea agreement was recited to the court on the record, the court initially ensured Appellant "wish[ed] to withdraw your former pleas of not guilty" to the two counts, which were then reviewed.  (Plea Tr. 5).  His attorney noted their discussions of the elements, defenses, facts, anticipated evidence, and probable witness testimony if the case would have been taken to trial.  *Id.* at 4-5, 13.

**{¶28}** During further colloquy, the court additionally reiterated Appellant was changing his plea.  *Id.* at 15.  Then, the court again ensured Appellant wanted to withdraw his prior not guilty pleas.  *Id.* at 17.  Appellant said he was pleading guilty, with no assertions of innocence (regarding the offenses to which he was pleading).  *Id.* at 19.

**{¶29}** Even more notable, *Appellant explicitly agreed the statement of facts provided by the prosecutor was correct*.  *Id.* at 19-21.  On its face, this was itself a complete admission of guilt, which a defendant would recognize as such and which the record shows this defendant recognized as such.  As Appellant admitted his factual guilt, his case is distinguishable from any case missing this fact.

**{¶30}** Furthermore, the fact that certain items are "part" of the effect of a guilty plea does not mean the guilty plea does not have other effects.  *See Oliver*, 2021-Ohio-1247, at ¶ 20 (7th Dist.) (stating the guilty plea as a complete admission and the court's ability to proceed to sentencing are "part of" the effect of the guilty plea).  It is undisputed the court advised Appellant of the rights he would be waiving as an effect of his guilty pleas and of the risks related to his immigration status, as further detailed in our above Statement of the Case.

**{¶31}** In addition, Appellant was clearly informed of the upcoming steps and stages as part of the effect of his plea under the same Crim.R. 11(B) and (C)(2)(b).  This leads to the next issue raised by Appellant, and our subsequent analysis contains further observations related to the effect of a guilty plea as a complete admission of guilt.

**{¶32}** As to the second contested item (the Crim.R. 11(C)(2)(b) advisement "that the court, upon acceptance of the plea, may proceed with judgment and sentence"), the plea hearing commenced with a pronouncement of the plea agreement.  This included a recitation of what would occur after the plea was entered.  That is, the prosecutor announced a pre-sentence investigation would occur after which the parties would present sentencing arguments.  *Id.* at 4.

**{¶33}** Moreover, after advisement on the offenses and the penalties, the court paused to encourage Appellant to ask any questions he had. At that juncture, Appellant inquired: "So, I would be returned to the Immigration Detention Center tomorrow and then in about a month I will come back? Is that right?" *Id.* at 11. The court said he was correct. *Id.*

**{¶34}** Next, Appellant asked about the projected sentence length to be imposed when he returned "in a month" for sentencing. *Id.* at 12. Pointing out the court had not yet completed the plea advisements, the court explained there would be no promises on the sentence, while noting even agreed sentences were just recommendations. *Id.* at 12, 15. The court stated, "And the court is not bound to follow any plea recommendation and the court can always sentence to the fullest extent of the law. I'm not saying I'm going to do that but I do need him to understand once he changes his plea that the court could do that." *Id.* at 15.

**{¶35}** At its core, this discussion plainly addressed the ability to "proceed with judgment and sentence" upon accepting the plea. Crim.R. 11(C)(2)(b). Appellant said he understood this advisement within the answer to his own question about future sentencing. *Id.* He also said he understood the plea hearing proceedings and was satisfied with the services of counsel and of the interpreter. *Id.* at 14-15, 21.

**{¶36}** Finally, the judge explained she was about to accept Appellant's guilty pleas and make findings of guilt, after which it would be "difficult, if not impossible, for you to withdraw your guilty pleas and proceed to a trial." *Id.* at 21-22. Further ensuring Appellant wished the court to continue to judgment, the judge advised this was his one last chance to change his mind before she immediately proceeded to accept the pleas. The court announced a showing was made that Appellant was in fact guilty and found the pleas were knowing and voluntary without any promises or duress. *Id.* at 22.

**{¶37}** Collectively, the record shows the trial court personally addressed Appellant while informing him and determining he understood the court would be immediately accepting the plea and would later be imposing the final judgment of sentence. As agreed and jointly requested by the parties on the record, the court ordered a PSI and set the case for sentencing. The fact Appellant understood the court "may proceed to judgment and sentence" after accepting the plea was acknowledged within Appellant's own

questions to the court about coming back for sentencing after an estimated time period and the court's answers about the future sentencing proceedings.

**{¶38}** We note the rule does not require the court to inform the defendant it may "immediately" proceed to judgment and sentence. Crim.R. 11(C)(2)(b). Although a court can proceed immediately to sentence, it need not and did not in this case. Crim.R. 11(B)(3), citing Crim.R. 32. This was explicitly negotiated by the parties prior to the plea hearing and placed on the record at the hearing. The colloquy between Appellant and the court indicated the court complied with the portion of the rule dealing with an advisement on the ability to proceed to judgment and sentence. The court ensured Appellant understood the only remaining step after accepting the plea would be a judgment of sentencing after a future sentencing hearing because the court was ordering a PSI as both parties requested in their plea agreement.

**{¶39}** As to both items contested by Appellant, we also point out even as to constitutional rights subject to the strict compliance test, the Supreme Court does not require literal recitation of the contents of the rule. *State v. Miller*, 2020-Ohio-1420, ¶ 17, 21 (warning the reviewing court not to raise form over substance). The proper focus is not on "precise verbiage" of the rule; rather, the focus lies "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler*, 2020-Ohio-2765, at ¶ 12.

**{¶40}** Here, there was not a complete failure to comply with the non-constitutional items contained in Crim.R. 11(C)(2)(b). Accordingly, even if there was only partial compliance, Appellant was required to show prejudice, which was not alleged. In any event, there was no prejudice on the face of the record in this case from a failure to speak in a talismanic manner by specifically pronouncing the guilty plea is a "complete admission" and the court "may proceed to judgment and sentence" after accepting the plea. Appellant expressly voiced his knowledge that the trial court would be sentencing him to prison within weeks of accepting his guilty plea at the plea hearing, and an immigration deportation order had already been issued prior to his plea. There is no indication Appellant would not have pled guilty but for the lack of the precise language from the cited portions of Crim.R. 11. Consequently, Appellant's assignment of error is without merit.

Case No. 25 NO 0526

{¶41} For the foregoing reasons, the trial court's judgment is affirmed, and Appellant's convictions are upheld.


Waite, J., concurs.

Hanni, J., concurs.

---

For the reasons it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed.  Costs waived.stated in the Opinion rendered herein, the assignment of error is  overruled and

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.


## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**